IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DP SOLUTIONS, INC., TROY L.        )
CARRIKER, DELBERT KIRKMAN,         )
WALTER CHURCH, SR., FREDERICK      )
RIEK, LYNN CARRIKER, and           )
CAROL OWENS,                       )
                                   )
                Plaintiffs,        )
                                   )
        v.                         )    1:08CV104
                                   )
HELP DESK NOW, INC.,               )
                                   )
                Defendant.         )
```

**<u>MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON</u>**

This case comes before the Court on six related motions: Plaintiffs' motions to (1) remand and (2) stay consideration of Defendant's motions, and Defendant's motions to (3) compel arbitration, (4) stay litigation, (5) dissolve the state court's order of attachment, and (6) extend the time to file its answer. The issue of this Court's subject-matter jurisdiction is central to Plaintiffs' motion to remand and ultimately dictates the outcome of all of these matters. The controversy began when Plaintiffs brought state law contract claims in state court based on loans and debts owed by Defendant Help Desk Now, Inc. ("Help Desk") to Plaintiffs. Defendant, in turn, removed the case to this Court pursuant to 28 U.S.C. § 1441. It admits that the parties are not diverse and that removal may not be based on diversity of citizenship jurisdiction. And, while the underlying contract claim has no basis in federal law, Defendant asserts that because the dispute is subject to arbitration, federal jurisdiction exists (as

will be explained later) and supports the removal.  In furtherance of this position, Defendant has brought a separate motion to compel arbitration.  Plaintiffs dispute that the matter is subject to any arbitration clause that could serve as a basis for federal jurisdiction, hence removal.  Thus, Plaintiffs' motion to remand is inextricably intertwined with Defendant's motion to compel.

The underlying facts are as follows.  Prior to April 12, 2007, Plaintiff DP Solutions, Inc. ("DP Solutions") was the sole owner of Defendant Help Desk.  Plaintiffs Lynn Carriker, Walter Church, Sr., Delbert Kirkman, and Carol Owens are all directors and shareholders of DP Solutions, and Plaintiff Frederick Riek, also a shareholder, serves as Chairman of the company's Board of Directors.  The remaining Plaintiff, Troy Carriker, is not a shareholder, but is was an officer of DP Solutions.  All of the parties in the present case are citizens of North Carolina for purposes of the diversity of citizenship statute, 28 U.S.C. § 1332.

By April 2007, Defendant had apparently amassed significant debts, many of which were personally guaranteed by DP Solutions' shareholders.  In light of this, DP Solutions resolved to sell Defendant Help Desk to Xplore-Tech Services Private Limited ("Xplore-Tech"), a company based in India, and Defendant became a wholly-owned subsidiary of that company.  Under the purchase agreement between DP Solutions and Xplore-Tech, Xplore-Tech explicitly assumed Defendant Help Desk's liabilities, including the debts owed to DP Solutions and Plaintiffs.  While Plaintiff DP

-2-

Solutions was a signatory to the purchase agreement, Defendant Help Desk and the remaining six Plaintiffs were not.[1]

Soon after Xplore-Tech acquired Defendant, a dispute arose regarding the amounts owed to DP Solutions and Plaintiffs by Defendant Help Desk. The debts consist of the following: (1) written promissory notes made from Defendant to Plaintiffs Kirkman, Church, and Troy Carriker in exchange for loans made between October 2004 and March 2006; (2) loans made to Defendant by Plaintiffs DP Solutions, Riek, Owens, and Lynn Carriker between August 2006 and March 2007; and (3) a payment made by Plaintiff DP Solutions as guarantor on a loan made June 2004 by BB&T to Defendant. When the parties ultimately failed to reach an agreement as to repayment of these loans, Plaintiffs filed the present action in Guilford County Superior Court and obtained an order of attachment. Notably, and the significance of which will become clear later, there is no evidence that Defendant Help Desk or any other party ever attempted to begin the arbitration process other than via the tardy motion to compel after this case was filed.

Defendant unsuccessfully challenged the state court's order of attachment, and then filed a notice of removal in this Court citing federal jurisdiction based on 9 U.S.C. § 205 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the

---

[1] Plaintiff Frederick Riek signed the agreement, but did so on behalf of DP Solutions in his capacity as Chairman of the Board of Directors.

Convention").[2]  That law allows a party to use federal courts to enforce an arbitration clause.  However, the arbitration clause in question is not contained in the various Help Desk loans, but rather in the purchase agreement between Plaintiff DP Solutions and non-party Xplore-Tech.  Plaintiffs point out that, not only do the contracts in dispute have no arbitration clause, but, moreover, five of the seven Plaintiffs did not even sign the purchase agreement with Xplore-Tech, and Riek only did so on behalf of DP Solutions.

## Discussion

In general, actions filed in state court may be removed to federal court if the federal court would have had jurisdiction over the suit, such as through diversity of citizenship of the parties or if the matter involves a federal question.  As pointed out earlier, the parties' citizenship is not diverse.  But, Defendant contends the matter involves a federal question.  This Court has original jurisdiction over "civil actions arising under the Constitution, laws, or treaties, of the United States."  28 U.S.C. § 1331.  As noted earlier, Defendant removed this case contending that Plaintiffs' claims are subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.

---

[2]Actually, the removal statute is 28 U.S.C. § 1441.  The arbitration statute merely provides for federal court jurisdiction.

-4-

§ 201, et seq., and if so, the action does arise under the laws of the United States.[3]

Because Defendant is the party seeking to invoke the jurisdiction of the Court, it has the burden of demonstrating the existence of that jurisdiction. "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148 (4th Cir. 1994); see also Albonetti v. GAF Corporation-Chemical Group, 520 F. Supp. 825 (S.D. Tex. 1981). Thus, in the present case, Defendant must show that the subject matter of the pending claims "relates to" an international arbitration agreement within the meaning of the Convention.[4] Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 580 (1999)(citing 9 U.S.C. § 205). Defendant Help Desk's biggest hurdle in doing so is that the debts in question do not contain an arbitration clause and, moreover, it (along with six of the seven Plaintiffs) is not even a nonsignatory to the purchase agreement between Xplore-Tech and Plaintiff DP Solutions, which does contain an arbitration clause.

In general, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

---

[3]Section 203 of that statute provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."

[4]The Convention terms arbitration clauses in commercial contracts "international" where, as here, they exist between a domestic corporation, in this case DP Solutions, and a foreign corporation, in this case Xplore-Tech, which is organized under the laws of India.

has not agreed so to submit." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000)(quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Here, there is no contract with an arbitration clause between Plaintiffs and Defendant. The only contract with such a clause is between Plaintiff DP Solutions and non-party Xplore-Tech. Nevertheless, Defendant argues that the non-signer Plaintiffs may still be bound by a contract they did not sign. Ignoring for the moment the bigger problem that the contract containing the arbitration clause is not now before the Court, the Court will discuss Defendant's contention that the non-signers are bound by the arbitration clause in the Xplore-Tech contract.

It is true that even where a party has not personally signed a contract containing an arbitration clause, other circumstances may still permit such a party to "enforce, or to be bound by, an arbitration provision within a contract executed by other parties." Int'l Paper, 206 F.3d at 416-417. This enforcement rests, not on the terms of the contract itself, but rather upon the theory of equitable estoppel. See Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 395 (2005).

Here, Defendant invokes equitable estoppel in substance, if not in name, by first arguing that "[e]ach Plaintiff was involved in the negotiation, execution or approval of the purchase agreement [between DP Solutions and Xplore-Tech]." (Docket No. 18, p. 13.) Thus, it argues that all of the Plaintiffs should be bound by the

-6-

terms of that contract. Defendant Help Desk then attempts to demonstrate its own ability to enforce the terms of the purchase agreement, despite its position as a non-signatory, by noting that "Xplore-Tech's decision to withhold payment [to Plaintiffs] under the purchase agreement constitutes the root of their dispute [with Help Desk]." (Id.) In other words, it contends that the debt which is the subject of the present lawsuit "relates to" the purchase agreement in such a way that that contract's arbitration clause should apply. As will be seen, not all claims, however tenuously related, merit such enforcement.

In Brantley, the Fourth Circuit held that there are only two circumstances in which a nonsignatory may be compelled to arbitrate based on equitable estoppel:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must "rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate [ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

Id. at 395-396 (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)). In this case, no signatory to the purchase agreement seeks to compel arbitration. Second, reliance

-7-

on the purchase agreement is not necessary to resolve the debt dispute between Help Desk and Plaintiffs, and Defendant Help Desk's obligations arose prior to and independently from the purchase agreement.

Only a year after its decision in Brantley, the Fourth Circuit issued American Bankers Ins. Group, Inc. v. Long, 453 F.3d 623 (2006), which clarified the situation. There, it held that the pivotal issue is "whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." Id. at 629. To illustrate this point, that court contrasted the facts before it with those of its earlier decision in R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc., 384 F.3d 157 (4th Cir. 2004). As set out in American Bankers, R.J. Griffin involved a situation where

> a builder had entered into a contract containing an arbitration clause with the landowner to build condominiums. 384 F.3d at 159. After the landowner sold the individual units, the new unit owners complained that the units leaked water, and they sued the builder in state court for negligence and breach of the implied warranty of good workmanship. Id. The builder filed a petition to compel arbitration of the owners' lawsuit, asserting that the owners should be equitably estopped from claiming that the arbitration clause did not apply to them because their state-court claims depended on the existence of the contract containing the arbitration clause. Id. at 160. On appeal of the district court's denial of the petition, we rejected this argument, concluding that the owners' underlying suit did not seek a "direct benefit" from the contract, id. at 161, because their negligence and warranty causes of action were not based on any breach of the contract, but were instead based on duties created by state tort law. Id. at 162-63.

-8-

American Bankers, 453 F.3d at 629-630.[5]

In contrast, the Fourth Circuit found that the plaintiffs in American Bankers could require arbitration from a non-signatory issuer of a promissory note, which it held was related to the subscription agreement. It found plaintiffs would not have any basis for recovery absent the subscription agreement, which contained an arbitration clause. The facts were as follows. The subscription agreement incorporated a promissory note purchased by the plaintiffs from a third-party insurance provider. Because the plaintiffs claimed that the provider only issued the promissory notes at the behest of its underwriter, nonsignatory American Bankers Insurance Group ("ABIG"), the Court concluded that each of the plaintiffs' claims - "interference with contract, securities fraud and negligence, civil conspiracy, unjust enrichment and rescission, and violation of SCUTPA - [were][] dependent upon their allegation that ABIG breached a duty created 'solely by [the Note].'" Id. at 630 (citation omitted). "[W]ithout the alleged breach of the Note," the Court concluded, "the [plaintiffs] would have no cause to complain." Id.

In the present case, Defendant never argues, nor could it, that Plaintiffs claims "rely on" or "arise from" the contract between DP Solutions and Xplore-Tech, and it certainly never

---

[5]This case also notes that both the "rely on" test set forth in Brantley and the "direct benefit" test utilized in R.J. Griffin ultimately involve the same inquiry, that is, whether the plaintiff's claims "arise from" a duty created under the contract.

-9-

maintains, nor could it, that Plaintiffs would have no cause to complain absent that document. To avoid the reach of this Fourth Circuit law, Defendant espouses the standard set forth by the Fifth Circuit in <u>Beiser v. Weyler</u>, 284 F.3d 665 (5th Cir. 2002), arguing that a dispute "relates to" an arbitration and is subject to removal under § 205 if "an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case." <u>Id.</u> at 669.[6] Unfortunately for Defendant, the Court has no basis for compelling arbitration or maintaining jurisdiction in this case under either the <u>Beiser</u> or <u>Brantley</u> tests.

Even under the <u>Beiser</u> test, Defendant's argument that arbitration could conceivably affect the outcome of Plaintiffs' case confuses its own liability with that of Xplore-Tech. Defendant Help Desk chiefly argues that

> Plaintiff's lawsuit will require a fact-finder to assess the meaning of several contract provisions, to decide whether DPSI (through its Board Members) misrepresented material facts prior to the execution of the Purchase Agreement, and to ultimately determine whether Xplore-Tech, as purchaser of Help Desk, owes any payment on alleged debts to Plaintiffs.

(Docket No. 23, p. 3.) This argument ignores the fact that the existence or extent of any rights by Xplore-Tech, a non-party, are inapposite to resolving the sole issue in the present case, which is, the amount, if any, owed to Plaintiffs by Defendant Help Desk. The present lawsuit will not resolve anything beyond that issue.

---

[6]The Fourth Circuit has not adopted this approach and, therefore, this Court is not bound by it, but rather must follow Fourth Circuit law.

-10-

Indeed, the amount of debt assumed by Xplore-Tech under the terms of the purchase agreement may not necessarily be the amount actually owed by Defendant (and indeed Defendant appears to contend that it is not).

Because there is no basis for federal jurisdiction under 9 U.S.C. § 205 as asserted by Defendant in its notice of removal, Plaintiffs' motion to remand should be granted. Also Defendant's motion to compel arbitration should be denied for being without a basis. Defendant's additional motions to stay litigation, dissolve the order of attachment, and extend its time to answer are rendered moot by these recommendations, as is Plaintiff's motion to stay consideration of Defendant's motions.

As for the final matter of attorneys' fees, Plaintiffs have not adequately addressed the issue, and the Court declines to enter the fray <u>sua</u> <u>sponte</u>. Plaintiffs do not argue this point in their reply brief, and their previous discussion fails to set out any standard as to when expenses may be awarded. (<u>See</u> Docket Nos. 20, 13.) Their contention that Defendant's grounds for removal were "thin to the point of frivolity" is meaningless absent a showing that such grounds also merit relief.

**IT IS THEREFORE RECOMMENDED** that Plaintiffs' motion to remand (docket no. 12) be granted, that this case be remanded back to Guilford County Superior Court, and that Plaintiffs' request for attorneys' fees be denied.

**IT IS FURTHER RECOMMENDED** that Defendant's motion to compel arbitration (docket no. 8) be denied, and that Plaintiffs' motion to stay consideration (docket no. 16) and Defendant's motions for extension of time (docket no. 11), to dissolve the order of attachment (docket no. 10), and to stay litigation (docket no. 9) be denied as moot.

```
                              /s/ Russell A. Eliason
                            United States Magistrate Judge
```

October 9, 2008